Filed 8/10/22 Raquel C. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RAQUEL C., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F084405 <br><br> (Super. Ct. Nos. 01CEJ300027-2, 01CEJ300027-3, 01CEJ300027-4) <br><br><br> **OPINION** |

-ooOoo-

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review. Todd Eilers, Commissioner.

Raquel C., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Gurjeet K. Brar, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*] Before Smith, Acting P. J., Snauffer, J. and DeSantos, J.

Raquel C. (mother), in propria persona, seeks an extraordinary writ pursuant to California Rules of Court, rule 8.452 from the juvenile court's orders issued at a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)(1))[1] terminating reunification services and setting a section 366.26 hearing for September 12, 2022, as to her now four- and two-year old sons and one-year-old daughter.

Mother contends the juvenile court erred in finding that the Fresno County Department of Social Services (department) provided her reasonable reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Dependency proceedings were initiated in June 2021 after mother tested positive for amphetamine while being admitted to the hospital to deliver her youngest child. Mother has a history of methamphetamine and opiate use dating back to 2001. In March 2001, she tested positive for methamphetamine while giving birth to a daughter. The child was detained and mother was denied reunification services. In December 2001, mother's parental rights were terminated and the child was freed for adoption.

The department filed a dependency petition on the children's behalf, alleging mother's substance abuse problem placed them at a substantial risk of harm and that they were at risk of suffering the same neglect suffered by their half sibling. (§ 300, subds. (b)(1) & (j).) The petition identified Anthony M. (father) as the children's alleged father. The older children were initially placed together in foster care while the baby remained hospitalized.

On June 14, 2021, mother appeared with counsel at the detention hearing. The juvenile court ordered the children detained and offered mother random drug testing and

---

[1] Statutory references are to the Welfare and Institutions Code.

2.

supervised visits twice per week. A jurisdictional/dispositional hearing (combined hearing) was set for July 26, 2021.

In its report for the combined hearing, the department advised the juvenile court that mother met the criteria for a bypass of services based on her failure to treat the problems that resulted in the termination of her parental rights as to the children's older half sister. Nevertheless, the department believed it would be in the best interests of the children to offer her services and recommended the court order her to complete a parenting program, mental health, substance abuse and domestic violence assessments and any recommended treatment and submit to random drug testing.

The department also reported that mother was on probation because of fraud and identity theft and was not in compliance. Her probation officer said she inquired about a drug treatment program and enrolled in Fresno First, which mother reported to be an inpatient substance abuse program that she began in June 2021.

The department did not recommend reunification services for father because he was an alleged father and therefore not entitled to them. Should he elevate his paternity status, the department recommended bypassing him for services. For his part, father did not want to participate in reunification services because he anticipated going to prison or to a substance abuse program.

On July 26, 2021, the juvenile court sustained the petition, offered mother parenting classes, substance abuse, mental health and domestic violence assessments and any recommended treatment and random drug testing and scheduled a September 2021 dispositional hearing. Mother was personally present and represented by counsel. By that time, the youngest child had been placed in a resource family home.

Mother did not personally appear but was represented by counsel at the dispositional hearing on September 15, 2021. The juvenile court ordered her to complete the services offered at the July 16, 2021, hearing, denied father reunification services and scheduled the six-month review hearing for March 9, 2022.

3.

In November 2021, mother completed a mental health assessment and met the criteria for mental health treatment but failed to participate in services and was discharged. She did not engage in any of the other court-ordered services or make herself available to the department and the telephone number she provided was no longer a working number. Social worker Raylene Rodriguez conducted an inmate search and located mother in county jail. She was taken into custody on February 8, 2022. Rodriguez sent mother a letter in county jail on February 22, 2022.

In its report for the six-month review hearing, the department recommended the juvenile court terminate mother's reunification services and set a section 366.26 hearing. The two older children were placed with a relative who was willing to adopt them. The foster parent of the youngest child was willing to be the child's guardian if a suitable relative could not be identified.

Mother appeared in custody at the six-month review hearing on March 9, 2022, and provided the name of a relative she wanted assessed for placement. County counsel requested that father be elevated to presumed father status and asked for a continuance to assess him for reunification services. The juvenile court continued the hearing to April 20, 2022. On April 20, the juvenile court elevated father to presumed father status and set a contested six-month review hearing for May 16, 2022.

The parents appeared in custody at the contested six-month review hearing. Father appeared for the purpose of requesting visitation before he went to prison. Mother took the position the department failed to make reasonable efforts to assist her in reunifying. Therefore, the juvenile court should continue reunification efforts.

Mother testified she never met with the social worker to discuss her court-ordered services. They only communicated by text. She never received any papers from the social worker because they were sent to the wrong address. She enrolled in Fresno First on June 16, 2021, and left the first week of August to deal with issues at home. The social worker met with her after the March 9, 2022, hearing and at the jail to

discuss her services. Afterward mother explored the services available in jail. She completed parenting, substance abuse, and domestic violence classes but was unable to drug test because testing was not available. Her expected date of release was January 20, 2023. There was a possibility she could be released earlier because she worked in the laundry and contested her time credits.

The juvenile court found mother was provided reasonable services but made no progress. The court noted that mother was out of custody when the court offered her the services that ultimately comprised her reunification plan. However, she failed to make herself available and then did not pursue services earnestly until she was incarcerated.

The juvenile court terminated mother's reunification services, ordered once monthly visitation for mother and quarterly virtual visitation for father as to the youngest child, and set a section 366.26 hearing.

## DISCUSSION

Mother contends the services provided were not reasonable because she did not have the proper referrals and the social worker did not communicate with her. She identifies specific services she completed while in custody and asserts she has the support of her older children and immediate family. She believes it would be detrimental to the children if she was not granted continued reunification services.

The juvenile court may terminate reunification services and set a section 366.26 hearing where the children constitute a sibling group and the court finds by clear and convincing evidence the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan. The court may not, however, terminate reunification services if reasonable reunification services have not been provided. In such a case, the court must continue services to the 12-month review hearing. (§ 366.21, subd. (e)(3).) To be a sibling group, the children must have been removed at the same time and at least one of the children was under the age of three at the time of initial removal. (§ 361.5, subd. (a)(1)(C).)

"The 'adequacy of reunification plans and the reasonableness of the [department's] efforts are judged according to the circumstances of each case.' " (*In re M.F.* (2019) 32 Cal.App.5th 1, 14.) Services are considered reasonable if the child welfare agency has " 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents.' " (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) "In almost all cases it will be true that more services could have been provided more frequently and that the services provided were imperfect. "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

When a party challenges the finding that reasonable services were offered or provided, we determine whether there is substantial evidence to support the court's finding by reviewing the evidence most favorable to the prevailing party and indulging in all legitimate and reasonable inferences to uphold the court's ruling. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 46.) We conduct our substantial evidence review bearing in mind the required clear and convincing standard of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

Prior to the six-month review hearing, the evidence before the juvenile court was that mother completed only one of her case plan requirements—a mental health assessment in November 2021—but did not follow through with the other services, failed to maintain contact with the department and started participating in her court-ordered services, with the exception of drug testing, after she was incarcerated in February 2022.

During the hearing, mother attempted to show that she did not know what was required of her because the social worker did not communicate with her or provide her the required referrals. However, her testimony was evasive and contradictory even while under questioning by her attorney. She testified she and the social worker never met in

person to discuss her case plan but communicated by text message only. However, she acknowledged the social worker met with her after the March 9, 2022, hearing and at the county jail. Asked when the social worker first contacted her to discuss services, mother was nonresponsive, stating, "I never received any of the papers. They first went to a different address, but they didn't go to the address I was currently residing at." She testified she told the social worker she did not receive the referrals. Asked what attempts she made to contact the social worker to discuss the services, mother stated, "I just responded, like I said, via text message. … I've never had a CPS case before. So I wasn't sure [where to go or how to go about it]. I was just waiting for the papers that were supposed to show my plan and the things that I was supposed to do." She acknowledged, however, on cross-examination that she did have a prior case many years before. She also acknowledged completing a mental health assessment.

In finding that mother was provided reasonable reunification services, the juvenile court noted that mother began participating in her services after she was in the restricted environment of the jail; before that she had limited if any contact with the department. The court stated, "[T]he parents have obligations. Yes. The Department has to offer services, and those services must be reasonable. But a parent can't just say, 'Well, I didn't know' or 'I didn't get the information and so, therefore, I did nothing.' "

We conclude substantial evidence supports the juvenile court's reasonable services finding. Mother knew early on what services she needed to complete to reunify with the children. She was present on June 14, 2021, when the court ordered her to participate in random drug testing and on July 26, 2021, when the court ordered the specific services comprising her case plan. Unfortunately, it is nowhere stated that the social worker provided mother the specific referrals required to access her services. However, it is reasonable to infer that she would not have been able to complete a mental health evaluation without a referral and that if the social worker gave her a mental health referral that she gave her referrals for the other services as well. If that is the case, and

mother neglected to utilize them and to maintain contact with the department, then she cannot make the case the department failed to make reasonable efforts to assist her. Further, we could not say services were not reasonable in this case even if the social worker did not provide mother referrals. In the short time mother was incarcerated prior to the hearing, she was able to complete all of her service plan requirements except random drug testing. As a result, she was unable to demonstrate she could maintain sobriety, which was critical since it was her drug use that necessitated the children's removal. Thus, it was not the department's failure to assist mother that prevented her from reunifying with the children; rather, it was her failure to utilize the services offered to treat her substance abuse so as to resume custody of her children.

We find no error.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).